UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————————

DANIEL F. MANNING,

                                        Plaintiff,

                -vs-                                        13-CV-497-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

———————————————————————————————

APPEARANCES:   BERNHARDI & LUKASIK PLLC(SARAH A. FREDERICK, ESQ., of
                        Counsel), West Seneca, New York, for Plaintiff.

                        WILLIAM J. HOCHUL, JR., United States Attorney (MARY PAT
                        FLEMING, Assistant United States Attorney, of Counsel), Buffalo,
                        New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated August 6, 2014 (Item

14).

        Plaintiff Daniel F. Manning initiated this action on May 10, 2013, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") and Supplemental Security

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure (*see* Items 7, 8).  For the following reasons, plaintiff's motion is denied, and

the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on October 12, 1963 (Tr. 158).[1] He filed applications for SSDI and SSI benefits with a protective filing date of February 9, 2010, alleging disability due to urological problems, a pinched nerve in the neck and back, and high blood pressure, with an onset date of October 27, 2005  (Tr. 158-63, 164-67).  The applications were denied administratively on April 21, 2010 (Tr. 79-87).  Plaintiff requested a hearing, which was held on July 7, 2011, before Administrative Law Judge ("ALJ") Roxanne Fuller (Tr. 53-78).  Plaintiff appeared and testified at the hearing, and was represented by non-attorney representative Brian P. Kujawa.  Vocational expert ("VE") George Starosta also appeared and testified.

On July 20, 2011, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 34-50).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (herniated cervical disc, hypertension, and urethral stricture disease), while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 39-40).  The ALJ discussed the evidence in the record, including reports from treating and consultative medical sources and plaintiff's hearing testimony and statements regarding his complaints of pain and limitations of functioning, and determined that plaintiff had the

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 7).

residual functional capacity ("RFC") to perform light work[2] with several specified exertional limitations (Tr. 40-44).  Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC would be able to perform the physical and mental demands of plaintiff's past relevant work as a gas station attendant, as well as other jobs existing in the national and local economies (*see* Tr. 71-74), the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 45-46).

The ALJ's decision became the final decision of the Commissioner on March 13, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ (1) failed to properly assess plaintiff's credibility with regard to his testimony and statements about the effect of his urinary incontinence on his ability to perform work-related activities; (2) failed to give controlling weight to the opinion of plaintiff's treating physician in this regard; and (3) improperly relied upon the VE's testimony because it was based upon a hypothetical question that did not fully take into account plaintiff's functional limitations.  *See* Items 8-1, 13.  The government contends that the Commissioner's determination should be affirmed

---

[2]Light work involves lifting no more than 20 pounds occasionally, 10 pounds frequently, standing and/or walking for six hours in an eight-hour work day and sitting six hours in an eight-hour work day. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling (SSR) 83-10. If someone can perform light work, we determine that they can also perform sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Items 7-1, 11.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.      Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes

before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c),  416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008

WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Fuller determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since October 27, 2005, the alleged onset date (Tr. 24).  At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 39-40).

At step four, the ALJ discussed plaintiff's testimony and statements about his symptoms, including uncontrollable bladder and neck and back pain, along with the medical evidence of record (Tr. 40-44).  The ALJ found that, while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged,

his statements concerning the intensity, persistence and limiting effects of his symptoms were "not credible to the extent they are inconsistent with" the ALJ's RFC assessment.  As for the opinion evidence, the ALJ accorded "great weight" to the medical source statement of Dr. Donna Miller, who conducted a consultative internal medicine examination of plaintiff on April 14, 2010, finding him to have "mild limitation with repetitive bending, turning, twisting, lifting, carrying, reaching, pushing, and pulling." (Tr. 342).  The ALJ accorded "little weight" to the assessment of plaintiff's treating physician, Dr. Andrew Berger, that plaintiff was limited to work-related activities consistent with sedentary work[3] (*see* Tr. 370-75). Based on her review of the evidence, the ALJ found that plaintiff had the RFC to perform light work, with certain additional functional limitations related to climbing, balancing, stooping, crouching, kneeling, crawling, handling and manipulation of objects, and bilateral overhead reaching (Tr. 40).  Relying on the VE's testimony that an individual with plaintiff's RFC could perform not only his past relevant work as a gas station attendant, but other jobs that exist in significant numbers in the national economy, the ALJ concluded that plaintiff was not disabled within the meaning of the Act (*see* Tr. 45-46).

## IV.   Plaintiff's Motion

### A.   Credibility

---

[3]"Sedentary work" is defined in the regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff contends that the ALJ failed to properly assess the credibility of plaintiff's testimony and statements regarding the effect of his urinary incontinence on his ability to do work-related activities. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the

symptoms.  20 C.F.R. § 416.929(c)(3)(i)–(vii); *see also Meadors v. Astrue*, 370 F.App'x 179, 184 n.1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process provides further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the ALJ found that plaintiff's impairments could reasonably be expected to cause the limitations testified to, but that his statements concerning the intensity, persistence and effect of those limitations were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  In making this determination, the ALJ considered plaintiff's testimony regarding his impairments, including an uncontrollable bladder resulting in frequent need to use the bathroom and change his adult diaper, and back and neck pain limiting his ability to walk and climb stairs (Tr. 40-41).  The ALJ also discussed the medical evidence regarding plaintiff's treatment for urethral stricture disease,[4] beginning with surgery in October 2005, performed by Kenneth Beasley, M.D., to correct plaintiff's attempt at self-catherterization (*see* Tr. 41, 248-59).  This was followed

---

[4]Urethral stricture is an abnormal narrowing of the urethra, the tube that carries urine out of the body from the bladder.  http://www.nlm.nih.gov/medlineplus/ency/article/001271.htm (National Institutes of Health "MedlinePlus" website).

by several incidental surgical procedures performed between January 2006 and April 2007 by Stephen Schatz, M.D. (*see* Tr. 240-47, 352-53), whose post-operative diagnosis was "[n]o significant recurrence of strictures" (Tr. 240).

The ALJ then discussed reports from urologist Mark Chazen, M.D., who first saw plaintiff in May 2008 for evaluation of an elevated PSA (Tr. 299-300). Dr. Chazen performed transrectal ultrasound and biopsy of plaintiff's prostate in June 2008 (Tr. 297-98), and a cytoscopy in February 2009, following which Dr. Chazen reported that plaintiff's urethra "actually looked terrific. There is no evidence of any urethral foreign bodies or scarring or stricture" (Tr. 320). Upon follow-up urological examination in August 2009, Dr. Chazen reported that plaintiff's bladder medication (Sanctura XR 60 mg.) was "work[ing] very well for him. It has significantly decreased his urgency and urge incontinence" (Tr. 324). A further cytoscopy in September 2009 revealed "recent recurrent urinary tract infections perhaps related to his urethral stricture repairs …," but "no evidence of ongoing stricture" (Tr. 326). Dr. Chazen's recommended course of treatment was "simply observation" (*id.*). At follow-up examinations in June 2010 and January 2011, plaintiff reported "no complaints" (Tr. 360) and "some occasional incontinence" (Tr. 363), and Dr. Chazen reported that was "doing fairly well" overall, and his symptoms were "stable" (Tr. 364).

ALJ Fuller determined that this objective medical evidence regarding plaintiff's treatment for urethral stricture disease did not reveal functional limitations to the point that plaintiff was unable to work, and did not support plaintiff's testimony regarding his need for frequent use of the restroom during an 8-hour work period (Tr. 43). Rather, the evidence indicated that plaintiff's urinary incontinence was well-controlled by medication and the use

of adult diapers, and that his condition had stabilized to the point that plaintiff was able to perform work consistent with the ALJ's RFC assessment (Tr. 42).  The ALJ also found plaintiff's testimony about his activities of daily living –*i.e.*, that he lives alone and is able to do household chores, cook, and manage his checkbook– to be consistent with an RFC for a reduced range of light work (*see* Tr. 41, 43).

As the above discussion demonstrates, the ALJ's finding that plaintiff's statements regarding his functional limitations and restrictions as a result of his urinary incontinence were not fully credible is supported by the findings of plaintiff's treating sources and other substantial medical evidence in the case record, and is sufficiently grounded in the evidence and articulated in the ALJ's determination to make clear to plaintiff, to this court, and to subsequent reviewers the weight given to plaintiff's statements about his functional limitations, and the reasons for that weight.  As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority.

Accordingly, plaintiff is not entitled to reversal or remand on this ground.

**B.      The Treating Physician Rule**

Plaintiff also contends that remand is necessary because the ALJ failed to accord proper weight to the opinions of plaintiff's primary care physician, Dr. Berger, regarding the functional limitations imposed by plaintiff's urinary incontinence.  As explained in numerous Second Circuit opinions, the Social Security regulations "recognize a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment

of the claimant." *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013). However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Rather, "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts").

When the ALJ does not accord controlling weight to the medical opinion of a treating physician, the regulations require that the ALJ's written determination must reflect the consideration of various factors, including: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must then "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal alteration and citation omitted). The notice of determination must "always

give good reasons" for the weight given to a treating source's opinion, 20 C.F.R. § 416.927(c)(2), and the ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983), *quoted in Rosa*, 168 F.3d at 79; *see also Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir.1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion); *Halloran*, 362 F.3d at 32–33 ("This requirement greatly assists our review of the Commissioner's decision and 'let[s] claimants understand the disposition of their cases.' ") (quoting *Snell*, 177 F.3d at 134).

In her written determination in this case, ALJ Fuller indicated that she considered the "medical assessment of physical ability" report completed by Dr. Berger on November 30, 2009 (Tr. 305), which limited plaintiff to sedentary work activity.  The ALJ stated that gave this assessment "little weight because it is not supported by or consistent with the record as a whole …," and because Dr. Berger's "treatment notes do not show objective signs and findings that would limit [plaintiff] to sedentary work and he refers to no objective signs or findings in his opinion" (Tr. 44).  The ALJ also indicated that she considered Dr. Berger's "Medical Source Statement of Ability To Do Work-Related Physical Activities" dated June 7, 2010,[5] containing more detailed findings with respect to plaintiff's limitations in terms of lifting/carrying, sitting/standing/walking, use of hands and feet, postural activities, and environmental/non-extertional limitations (Tr. 370-75).  The ALJ did not

---

[5]Reported by the ALJ as June 9, 2009, which is the date of the first page of Dr. Berger's outpatient treatment notes from Concord Medical Group, submitted to the ALJ by plaintiff's representative as post-hearing exhibit 12F (*see* Tr. 365-75).

adopt Dr. Berger's assessment of plaintiff's limitations with respect to sitting, standing, walking, pushing, pulling, handling, fingering, and reaching "because the record does not show that [plaintiff] is so limited …," and explaining further that plaintiff "is independent with his activities of daily living and the objective signs and findings do not show he is so restrict[ed]" (Tr. 44).

The ALJ made no mention of Dr. Berger's notation, in the section on the June 7, 2010 assessment form requesting a statement regarding any other work-related activities which are affected by the claimant's impairments, that plaintiff's "urinary incontinence necessitates frequent trips to the bathroom" (Tr. 374). According to plaintiff, the ALJ's failure to consider this opinion as probative evidence from plaintiff's primary care physician regarding the functional limitations caused by plaintiff's urological impairment violates the treating physician rule.

However, as demonstrated by the discussion above, the ALJ's written determination provides a clear indication that her finding that plaintiff's urinary incontinence did not result in functional limitations which prevented him from performing a reduced range of light work was based upon full consideration of the medical evidence of record pertaining to plaintiff's urological impairment, set forth in the reports of his treating urologist, Dr. Chazen. By contrast, the record reflects that Dr. Berger's primary care treatment of plaintiff from February 2007 through October 2010 was focused on plaintiff's cervical disc herniation and hypertension problems, leaving treatment of the urological condition to the specialist, Dr. Chazen (*see* Tr. 238-39, 267-73, 366-69; *see also* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a

specialist.")).  Viewed in this light, the ALJ's stated reasons for according little weight to Dr. Berger's assessment of plaintiff's exertional limitations–*i.e.*, the absence of any reference to objective signs and findings supporting the assessment–apply with equal force to Dr. Berger's statement regarding the limiting effects of plaintiff's urinary incontinence.

In addition, the ALJ clearly stated her reasons for according "great weight" to the consultative examiner's "stable" prognosis with respect to plaintiff's medical impairments (including his urological condition), and her finding of mild limitations of functioning with respect to certain physical activities (which were incorporated into the ALJ's RFC assessment) (*see* Tr. 44, 339-42).  Notably, the consultative examiner did not assess any functional limitations stemming from plaintiff's urological condition (Tr. 341-42).  Indeed, apart from Dr. Bender's notation on the "Medical Source Statement" form regarding the need for frequent trips to the bathroom, plaintiff has identified no medical source opinion in the record indicating that his urinary incontinence imposed any significant limitation on his ability to perform basic work-related activities.

Based on this analysis, the court finds that the ALJ's RFC assessment was done in accordance with the requirements of the regulations governing consideration of medical source opinion evidence, and plaintiff is not entitled to remand for violation of the treating physician rule.

### C.    VE Testimony

Finally, plaintiff contends that the ALJ improperly relied on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC would be able to perform the physical and mental demands of plaintiff's past relevant work as a

gas station attendant, as well as other jobs existing in the national and local economies, because it was based upon a hypothetical question that did not fully take into account plaintiff's functional limitations. The court's review of the hearing testimony reveals otherwise.

The transcript reveals that the ALJ asked the VE to assume an individual of plaintiff's age, education, and experience capable of performing light work, with the following additional limitations:

> [N]ever climbing ramps or stairs. Never climb ladders, ropes or scaffolds. Never balance. Occasional stoop, crouch, kneel, crawl. Frequent overhead reaching with both arms. Frequent handling objects, that is, gross manipulation with both hands. Frequent fingering, that is fine manipulation of items no smaller than the size of a paper clip with both hands.

(Tr. 71-72). The VE responded that such an individual would be able to perform plaintiff's past work as a gas station attendant, as well as several other jobs existing in significant numbers in the national economy (see Tr. 72-74). When asked if there were any jobs an individual with these functional limitations could perform if he/she had to take a five-minute bathroom break four or five times during the work day, in addition to regularly scheduled breaks, the VE responded that employers will generally tolerate employees being off-task for about 10 percent of work time, but not 20 percent (Tr. 74-75), which would accommodate the restrictions imposed by plaintiff's incontinence in accordance with the above discussion of the record.

Plaintiff also argues that the hypothetical should have included restrictions based on plaintiff's loss of use of his right arm, and his learning disability. However, the court's review of the record reveals that the limitations of function incorporated into the ALJ's RFC assessment adequately addressed the medical evidence regarding plaintiff's use of his

right arm, and plaintiff has identified no evidence indicating any exertional or non-exertional limitations imposed by his learning disability.

Based on this review of the record, the court finds that the hypothetical scenarios posed to the VE presented an accurate portrayal of plaintiff's residual functional capacity, as determined by the ALJ and supported by substantial evidence in the record. Accordingly, plaintiff is not entitled to remand on the basis of improper reliance on the VE's testimony.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 8) is denied, the Commissioner's motion for judgment on the pleadings (Item 9) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated:   October 15, 2014